1  Zach Tuck
2  1600 E. Vista Way #85
   Vista, CA 92084
3  Ph: 760-840-1813
   carcrazytuck@yahoo.com

4  Plaintiff In Pro Se



FILED

AUG 0 8 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# IN THE UNITED STATED DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ZACH TUCK,** | ) Case No.  **17 CV 1595 JAH JLB** |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND** |
| | ) **INJUNCTIVE RELIEF FOR** |
| vs. | ) **VIOLATIONS OF THE** |
| **WELLS FARGO BANK.,** | ) |
| national banking service, | ) 1) TELEPHONE CONSUMER PRACTICES ACT |
| **WELLS FARGO CARD SERVICES.,** | )    **(TCPA) 47 U.S.C. §227 *et. seq.*** |
| national banking & credit card service, | ) |
| **NC FINANCIAL SOLUTIONS,** | ) 2) FAIR DEBT COLLECTION PRACTICES ACT |
| a business entity, form unknown, | )    **(FDCPA) 15 U.S.C. §1692 *et seq.*** |
| **NET CREDIT,** | ) |
| a business entity, form unknown, | ) 3) FAIR CREDIT REPORTING ACT |
| **REVIVER FINANCIAL,** | )    **(FCRA) 15 U.S.C. §1681 *et seq.*** |
| a business entity, form unknown, | ) |
| **TRANS UNION, LLC.** | ) 4) CALIFORNIA ROSENTHAL FAIR DEBT |
| a national credit reporting agency [CRA] | )    COLLECTION PRACTICES ACT |
| **EQUIFAX INFORMATION** | )    **Civil Code §1788 *et seq.*** |
| **SERVICES, LLC,** | ) |
| a national credit reporting agency [CRA] | ) |
| **EXPERIAN,** | ) |
| a national credit reporting agency [CRA] | ) |
| **Does 1 - 25, inclusively,** | ) **DEMAND FOR DECLARATORY RELIEF** |
| | ) **DEMAND FOR JURY TRIAL** |
| Defendants. | ) |
| | ) |

# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

   **COMES NOW, ZACH TUCK**, plaintiff, proceeding In Pro Se in the

above-entitled case as an individual hereby sues the above-named defendant's for the

following allegations and claims for strict statutory violations of:

1) <u>The Telephone Communications Practices Act</u> (TCPA) 47 U.S.C.§227 *et. seq*;

2) <u>The Fair Debt Collection Practices Act</u> (FDCPA) 15 U.S.C. §1692 *et seq.*;

3) <u>The Fair Credit Reporting Act</u> (FCRA) 15 U.S.C. §1681 *et seq.;*

4) <u>The California Rosenthal Fair Debt Collection Practices Act</u> (RFDCPA) §1788 *et seq.*

# I.   PRELIMINARY STATEMENT

**1.**   Plaintiff ZACH TUCK (hereinafter "TUCK") contends that all of the above-named defendant's have all violated such laws by *repeatedly harassing the plaintiff* for the past [2] two years with an *ongoing debt collection campaign* involving numerous illegal attempts to collect an alleged but **nonexistent consumer debt never owed to ANY of the Defendant's by the Plaintiff**.

**2.**   The Defendant's have used harassment and the threat that they will place bogus account's on unsuspecting consumers credit reports, [which they did]. The time has come to unravel this national multi- agency collusion of companies and LLC's who can avoid prosecution/adjudication and liability by hiding behind the other company or creating confusion amongst the consumer debt collection arena on a national level. *Most if not all of what they do is illegal on a statutory level federally.*

**3.**   *Consumers across America* are getting duped out of thousands of dollars every day by the defendant's who ***do not conduct proper investigations or re-investigations on thousands of disputed consumer accounts,*** the Defendant's ***do not cease and desist their collection activities after thousands of disputes have been waged,*** but instead increase their illegal consumer collection activities. It has also been reported that many of the defendant's do not have a license to conduct business/collection activities in the State of California, and have been sued in many states for these very same *illegal* collection activities.

# II.  JURISDICTION AND VENUE

**4.**   Jurisdiction of this Court arises under 47 U.S.C.§227(b)(3) and also 15 U.S.C.§1692(k)(d). <u>All</u> Defendant's have conducted business in the state of California and whether legally licensed to do so or not, therefore personal jurisdiction is established.

5.  Venue is proper pursuant to 28 U.S.C.§1391b and California Civil Procedure §3959(a). Venue in this district is proper in that plaintiff TUCK resides in San Diego county, *all* of the defendant's transact daily business here, and the conduct complained of occurred here.

6.  This is an action for damages for $42,500.00 U.S. dollars.

## III.  PARTIES

7.  Plaintiff TUCK, is a natural person with a United States birth certificate.

8.  Upon information and belief defendant **WELLS FARGO BANK,** (hereinafter "W.F.B.") is a *creditor providing credit accounts to consumers* all over the United States and beyond, W.F.B. is also authorized to do business in California, with a corporate headquarters located at 420 Montgomery Street, San Francisco, CA 94104 . Upon information and belief the registered *CEO Daniel Shulman*. Defendant W.F.B. is an entity which *professionally collects consumer debts* which among other activities, is a *"furnisher"*of negative consumer credit information directly to all (3) three national credit reporting agencies, (hereinafter "CRA'S")

9.  Upon information and belief defendant **WELLS FARGO CARD SERVICES,** (hereinafter "W.F.C.S.") is a *creditor providing credit accounts to consumers* all over the United States and beyond, W.F.C.S. is also authorized to do business in California, with a corporate headquarters located at 7000 Vista Drive West, Des Moines, Iowa, 50266 . Upon information and belief the registered *CEO Mike McCoy*. Defendant W.F.C.S. is an entity which *professionally collects consumer debts* which among other activities, is a *"furnisher"*of negative consumer credit information directly to all (3) three national credit reporting agencies, (hereinafter "CRA'S")

10.  Upon information and belief defendant **NC FINANCIAL SOLUTIONS,** (hereinafter "N.C.F.S.") is a *creditor providing credit accounts to consumers* all over the United States and beyond N.C.F.S. is also authorized to do business in California, with a corporate headquarters located at 175 West Jackson Blvd., Suite 1000, Chicago, Illinois, 60604.

1  Upon information and belief the registered *CEO Stephanie Klein*. Defendant N.C.F.S. is an

2  entity which *professionally collects consumer debts* which among other activities, is a

3  "*furnisher*"of negative consumer credit information directly to all (3) three national credit

4  reporting agencies, (hereinafter "CRA'S")

5      **11.**  Upon information and belief defendant **NET CREDIT,**

6  (hereinafter "N.C.") is a *creditor providing credit accounts to consumers* all over the

7  United States and beyond N.C. is also authorized to do business in California, with a

8  corporate headquarters located at 200 W. Jackson Blvd., Suite 2400, Chicago, Illinois, 60606.

9  Upon information and belief the registered *CEO Stephanie Klein*. Defendant N.C. is an

10 entity which *professionally collects consumer debts* which among other activities, is a

11 "*furnisher*"of negative consumer credit information directly to all (3) three national credit

12 reporting agencies, (hereinafter "CRA'S")

13     **12.**  Upon information and belief defendant **REVIVER FINANCIAL,**

14 (hereinafter "R.F."), is/was at all times a *professional consumer debt collection agency,*

15 which amongst other things *purchases and collects thousands of alleged consumer debts*

16 *all over the United States and beyond.*  Plaintiff upon information and belief believes

17 Defendant R.F. is **NOT** authorized to do business in California. R.F. has it's corporate

18 headquarters located at 327 W. 4th Avenue, Hutchinson, Kansas, 67501. Upon information

19 and belief the registered *CEO is Bradley E. Hochstein*. Defendant is an entity which

20 *professionally collects consumer debts* which among other activities, is a"*furnisher*" of

21 negative consumer credit information **directly** to all three "CRA'S.

22     **13.**  Upon information and belief defendant **TRANS UNION, LLC.,**

23 (hereinafter "T.U.") is one the *three largest national "CRA'S"* which reports and maintains

24 up to date consumer credit files all over the United States and beyond, TU is also

25 authorized to do business in California, with a corporate headquarters located at 555 W.

26 Adams Street, Floors 2-9, Chicago, Illinois, 60661. Upon information and belief the

27 registered *CEO is James M. Peck*. Defendant TU is an entity which among other activities,

28 is a collector and "*furnisher*" of positive and negative consumer credit information.

1    **14.**  Upon information and belief defendant **EQUIFAX INFORMATION**

2  **SOLUTIONS, LLC.**, (hereinafter "E.I.S.") is one the *three largest national CRA'S* which

3  reports and maintains up to date consumer credit files all over the United States and

4  beyond, E.I.S. is also authorized to do business in California, with a corporate headquarters

5  located at 1159 Lake Hearn Drive NE, Atlanta, GA, 30343. Upon information and belief

6  the registered *CEO is Richard F. Smith*. Defendant E.I.S. is an entity which among other

7  activities, is a collector and "*furnisher*" of positive and negative consumer credit

8  information.

9    **15.**  Upon information and belief defendant **EXPERIAN.,** is one the *three*

10  *largest national CRA'S* which reports and maintains up to date consumer credit files

11  all over the United States and beyond, EXPERIAN is also authorized to do business

12  in California, with a corporate headquarters located at 475 Anton Blvd., Costa

13  Mesa, CA. 92626. Upon information and belief the registered *CEO is Brian Cassin*.

14  Defendant EXPERIAN is an entity which among other activities, is a "*furnisher*" of

15  negative consumer credit information.

16    **16. DOES 1 thru 25 inclusively**, hereto, will be referred to as "credit bureau

17  defendants" or "credit agency defendants", DOES 1-25 are/is a consumer creditor

18  which, among other activities, reports allegedly delinquent consumer debts to credit

19  bureaus and is a "furnisher" of negative consumer credit to credit bureau defendants.

20  Defendant's  Does 1 thru 25, are individuals and business entities, form unknown, doing

21  business in the State of California as credit reporting agencies, debt collection agencies,

22  creditors or other persons or entities which engage in credit reporting and/or debt

23  collection. Does 1-25, Inclusive, includes individuals or business entities doing business in

24  the State of California as credit reporting agencies, debt collectors and/or creditors who

25  have refused to delete accounts of plaintiff that were procured through identity theft, mixed

26  file or other manner of recording an inaccurate credit account, even after plaintiff has

27  notified them of the false or inaccurate derogatory consumer credit information, and also

28  who have reported such accounts as derogatory credit references to all [3] three CRA'S.

**17.** Plaintiff TUCK does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of defendants sued herein as Does 1 through 25, inclusive, under the provisions of Section §474 of the California Code of Civil Procedure. Plaintiff TUCK is informed and believes and on that basis alleges that defendants Does 1 through 25, inclusive, are in some manner responsible for the acts, occurrences and transactions as officers, directors or managing agents of defendants or as its agents, servants, employees and/or joint ventures and as set forth in this Complaint, and that each of them are legally liable to plaintiff, as set forth below and herein:

a)     Said Officers, directors or managing agents of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 personally acted willfully with respect to the matters alleged in this Complaint;

b.     Said Officers, directors or managing agents of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 personally authorized, approved of, adopted and/or ratified the illegal acts alleged herein, or the agents, servants, employees and/or joint ventures of defendants did so act;

c.     Said Officers, directors or managing agents of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 personally participated in the acts alleged herein by the Plaintiff;

d.     Said Officers, directors or managing agents of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 personally had close supervision of their agents, servants, employees and/or joint ventures of Defendants;

e.     Said Officers, directors or managing agents of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 personally were familiar with the facts regarding the matters alleged herein;

f.     Said Officers, directors or managing agents of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 *personally failed to properly investigate and re-investigate the circumstances pertaining to the acts alleged herein.*

1   They also failed and refused to repudiate the herein alleged actions and failed to

2   *redress the harm done to plaintiff TUCK*. Further, said Officers, directors, or managing

3   agents of W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25

4   failed and refused to punish or discharge the said agents, servants, employees and/or joint

5   venturers of the Defendants. Plaintiff will seek leave to amend this Complaint to set forth the

6   true names and capacities of the said fictitiously named Defendant's as enumerated above,

7   together with appropriate charging allegations, when learned.

8        **18.**   Plaintiff is informed and believes, and thereon alleges that at all relevant times

9   herein each Defendant W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN

10  and Does 1-25 whether actually or fictitiously named, was the principal, joint venturer,

11  agent, servant or employee of each other defendant, and in acting as such within the course,

12  scope and authority of such relationship, took some part in acts and  omissions hereinafter

13  set forth, by reason of which each defendant is liable to plaintiff for the relief prayed for in

14  this Complaint, and any future Amended Complaint. Further, plaintiff alleges that each act

15  alleged herein, whether by named Defendant's or fictitiously named Defendant's or

16  otherwise, was expressly authorized or ratified, as these terms are used in California Civil

17  Code Section §3294(b), by each and every other Defendant W.F.B., W.F.C.S., N.C.F.S.,

18  N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 , whether named or fictitiously named.

19       **19.**   Collectively, these Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U.,

20  E.I.S., EXPERIAN and Does 1-25 hereto will be referred to as "credit  bureau Defendants"

21  or "credit agency Defendants" - is a consumer creditor which, among other activities,

22  reports allegedly delinquent consumer debts to credit bureaus and is a "*furnisher* of

23  *negative consumer credit to all [3] three above-named credit bureau Defendant's*.

24  ///

25  ///

26  ///

27  ///

28

## IV.  FACTUAL ALLEGATIONS

**20**.  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 are _creditors_ to _whomever they have established a business relationship with and/or provided services for which they can collect on the account_.

**21.**  Plaintiff TUCK alleges Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 are all professional _consumer debt collectors_ who are attempting to collect a _consumer debt_, subject to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 _et seq._ (FDCPA), due to the fact Defendant's **did not ever** have **any** _established business relationship_ with Plaintiff TUCK.

**22.**  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 are attempting to collect a alleged consumer account[s] that **never belonged to Plaintiff TUCK**.

**23.**  Plaintiff TUCK is a _consumer_, as the _purported alleged debt_ is a _consumer debt_, from an _unknown person_.

**24.**  Referring to the preceding paragraphs, Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 are all entities which are all _attempting to collect consumer debts from Plaintiff_ which Plaintiff did not incur; brings Defendant's well within the ambit of the California Rosenthal Fair Debt Collection Practices Act Civil Code §1788 _et seq._("RFDCPA") .

**25.**  Plaintiff TUCK has **_never had prior or present established relationship_** with Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 .

**26.**  Plaintiff TUCK received the very **first** consumer collection call during April of 2016. When Plaintiff TUCK answered this **first illegally placed call**, the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 employee/staff member explained to him that ["they" Defendant's] were looking for a past/present client of "theirs" who goes by the name of ZACH TUCK,["they" the Defendant's employee] went on to explain in detail that Mr. TUCK presently owed ["them" Defendant's] for past due credit card/collection agency bill[s].

**27.**   Plaintiff TUCK informed the person on the phone that "*this phone number the Defendant just called was his emergency cell phone number,* and "*he did not ever remember giving this emergency cell phone number to anyone other than his father and mother,* that he had in past month informed the Defendant companies *verbally and in writing that he disputed the same alleged debt[s] and* Plaintiff TUCK went on to tell that agent/employee/bill collector on this same very **first** illegally placed harassing consumer debt collection call [Plaintiff TUCK having had past experience with debt collection calls and how to demand no further debt collection calls instructed that ] "to never call his emergency cell phone number again" and *did not owe* agent/employee/bill collector's - i.e. Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 *any monies at any time EVER*!

**28.**   Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 were **instructed verbally during this first illegally placed debt collection call** to not **"ever"** place ANY consumer collection call[s] to him again on his emergency cell phone number." "Plaintiff TUCK during this first illegally placed call revoked [his] consent to ever be called again by the Defendant's, pursuant to- Reardon, 115 F. Supp. 3d at 1102].

**29.**   Plaintiff TUCK later followed this verbal telephone request up with written certified mailed demands to stop all illegal consumer collection calls to the Plaintiff and to "**cease and desist**" all further collection activities on all alleged account allegedly owed by Plaintiff TUCK to all Defendant's. All of *these requests were ignored by all above-named Defendant's and all requests fell on deaf ears*.

**30.**   From the date of the first illegally placed debt collection call in April of 2016 the defendant's have illegally placed more than [29] twenty nine calls to Plaintiff TUCK'S emergency cell phone number (760) 840-1813. Each and every harassing debt collection call illegally placed by the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 are separate individual strict statutory federal violations.[*I.e. if I run into your car on Monday and again on Friday, that is two separate federal statutory violations when it applies to TCPA claims]*

**31.** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 , all ignored this verbal request and continued their illegal collection activities for more than [8] eight months. To today's date Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 are presently still placing illegal collection calls to Plaintiff TUCK'S emergency cell phone and using the placing of negative credit lines on his credit reports to *illegally leverage* TUCK to pay a debt *he does not owe*, nor did he *ever owe anyone*.

**32.** This alleged debt originated from "*identity theft*" and was reported and disputed numerous times as *identity theft debt* with all three CRA'S..

**33.** Plaintiff TUCK over a many month period of time during 2016-2017 requested/demanded the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 via U.S. certified mailings disputing and re-disputing the bogus credit lines and requested/demanded all above-named Defendant's to commence investigations and re-investigations all of which went totally ignored by all above-named Defendant's.

**34.** All Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 completely **failed** to *cease and desist all further collection activities after being requested to numerous times over a more than year and a half period of time by Plaintiff TUCK*.

**35.** Plaintiff TUCK, **never**, *at any time*, signed any contracts, nor applied for any credit card[s] nor did he agree to obtain any credit card[s] **[in his name]** with **any** of the above-named Defendant's.

**36.** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 representative on the phone *assured Plaintiff TUCK that a record of the call was made*, their consumer clients name TUCK would be removed from this number, and *that no further calls would be placed to Plaintiff TUCK'S emergency cell phone number 760-840-1813* from the Defendant's.

**37.** To date, Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 have illegally  placed more than [29] twenty nine illegal consumer debt collection calls to his private emergency cell phone number, **[29] twenty nine** *of which are active statutory violations, [calls placed within the past four (4) years time]*.

**38.** Plaintiff TUCK *has no contractual obligation to pay* Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 **anything.**

**39.** Plaintiff TUCK **has never** given Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 *express written permission* to call Plaintiff TUCK'S emergency cellular phone.

**40.** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 **have never** *validated or verified the alleged consumer debt[s]* pursuant to United States statute 15 U.S.C. §1692g, even thought Defendant's were all requested to do so on numerous occasions via written certified letters mailed by Plaintiff TUCK.

**41.** **All attempts at debt certification/validation by all three CRA'S** went totally ignored by Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25.

**42.** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 **all completely failed to conduct proper investigation[s]** or **re-investigations**.

**43.** *Even up to today's date of the filing of this Complaint,* Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 continue their harassing debt collection campaign, are continuing to illegally report to all [3] three CRA'S [5] five *disputed/bogus* negative consumer credit lines affiliated with Plaintiff TUCK'S name and social security number, and are continuing to illegally place harassing debt collection calls to Plaintiff TUCK'S emergency cell phone.

**44.** **This continued illegal debt collection activity** by Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 is presently ***grossly affecting Plaintiff TUCK'S daily credit worthiness and ability to gain fair housing for the past several months now.***

**45.** From April 2016 to the date of the filing of this Complaint Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 illegally placed more than [29] twenty nine harassing debt collection calls to TUCK'S emergency San Diego area T-Mobile cell phone 760-840-1813, of which, *ALL* [29] twenty nine illegally placed collection calls fall well within the four (4) year TCPA statute of limitation period,

[i.e. *four (4) years from when the violation was "first discovered"*].  During the Discovery

phase of this trail Plaintiff may seek records going back *at least four years* -

SEE Jenkins v. G.C. Services, Ltd. P'Ship, 2012 WL 1067947, 898, (W.D.N.C. Mar. 29,

2012) - [*defendant ordered to identify date and time of all calls to plaintiff's number for*

*past [4] four years, and whether made by a person or an automatic telephone dialing*

*system* "**ATDS**" system].

     **46.**   From April, 2016 to today's date, Defendant's W.F.B., W.F.C.S., N.C.F.S.,

N.C., R.F., and Does 1-25 illegally placed more than [29] twenty nine *harassing* consumer

debt collection calls to Plaintiff TUCK'S *emergency cell phone*, **ignoring** Plaintiff TUCK's

numerous oral and written demands **not** to call Plaintiff's cell phone *after receiving the*

*very first illegally placed call*.

     **47.**   These same [29] twenty nine consumer collection calls from Defendant's

W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25 office numbers (866) 762-4359,

(800) 642-4720, (877) 383-4802, (877) 392-2014, (877) 392-2014, that were

*inadvertantly/mistakenly/illegally* placed to Plaintiff TUCK'S emergency cell phone

number (760) 840-1813, were all illegally placed using a phone system with automatic

telephone dialing system *"capabilities"*, or, a telephone call with *artificial and prerecorded*

*voices*, attempting to collect a consumer debt by leaving a prerecorded message, *and/or*

*threatening to continue collection actions for nonpayment* of an alleged consumer debt.

     **48.**   Some of the calls from Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F.,

and Does 1-25 would come to Plaintiff's cell phone, when answered Plaintiff would say

"hello", there would follow a pause, then an automated prerecorded message would play,

*stating similar*: "If you are? Zach Tuck, Press one". When pressing one, a further message

would continue. The call was not made by human hands nor any conversation made with a

human being. This is a *separate and distinct damage cause of action* and clear cut

*violations of strict liability statutes of the TCPA*.

     **49.**   In another attempt to informally settle the above-pled violations Plaintiff

TUCK sent numerous certified written letters to the Defendant's dated between the dates

of April of 2016 and the present date, and <u>as of today's date all written attempts at informal resolution have all gone completely un-answered</u> by all above-named Defendant's.

**50.**   To Date, Plaintiff has received by mail several threatening consumer collection demand letters [dunning letters] from <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., and Does 1-25</u> with the constant threat of suing Plaintiff TUCK in the Court of law, the threat of placing bogus alleged credit lines on Plaintiff TUCK'S credit reports, and the threat that they are not going away, things will get worse.

**51.**   <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25</u> informed Plaintiff TUCK that debt collection calls and illegal reporting of negative credit lines on his credit reports would **stop** or be **removed** soon after the mailing of the first one or two letters. When after no answer to the third letter Plaintiff mailed a fourth letter titled in bold red writing  "Notice's of Intent to Litigate", which also went totally <u>un-answered by all Defendant's</u>.

**52.**   <u>Defendant's</u> [29] twenty nine illegally placed *<u>debt collection calls continue today</u>*, even after Plaintiff notified Defendant's verbally and in certified written mailed requests over many months to *<u>**cease and desist all illegal collection activities and stop calling his emergency cell phone number immediately**</u>*.

**53.**   <u>Defendant's</u> intentionally, willfully and knowingly violated multiple strict liability statutes of the Telephone Consumer Protection Act (TCPA)  with malice and disregard for the Plaintiff.

**54.**   <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F.,</u> do not care.

**55.**   During all the above referenced [29] twenty nine illegally placed debt collection calls to Plaintiff TUCK'S emergency cellular phone, <u>Defendant</u>'s *staff/personnel* *<u>**asserted a right which it lacks, to wit, the right to enforce a consumer debt**</u>*.

**56.**   On all the above-referenced [29] twenty nine illegally placed calls to Plaintiff TUCK'S emergency cell phone, <u>all Defendant's *failed to identify that"they"were professional debt collectors attempting to collect a consumer debt*</u>.

**57.**   All [29] twenty nine illegally placed calls to Plaintiff's cellular phone trespassed on Plaintiff and Plaintiff incurred multiple injuries as his peace was disturbed, Plaintiff's personal time was wasted, Plaintiff was charged for the calls, Plaintiff incurred wear and tear of his emergency cell phone and wear of his cell battery.

## V.   FIRST CAUSE OF ACTION
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## TCPA §227(b)(1)(A) AND §227(b)(1)(A)(iii)
## BY DEFENDANTS W.F.B., W.F.C.S. N.C.F.S., N.C., R.F. AND DOES 1-25

**58.**   Plaintiff TUCK re-alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 57 above as though fully set forth herein.

**59.**   This damage is for the more than [29] twenty nine illegally placed calls by Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 to Plaintiff's emergency cell phone, [*each call* is a separate distinct *individual* strict statutory violation of the statute], [i.e. "*If a person hit your car on Monday then again in Friday, that's two separate distinct statutory violations*].

**60.**   *As a separate and distinct damage and cause of action*, Defendant's all have demonstrated intentional and willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A) and §227(b)(1)(A)(iii), *by continually violating strict liability statute by the following*:

**(TCPA) 47 U.S.C. §227(b)(1)(A) states in part;**

**(b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT**

**(1)** PROHIBITIONS - It shall be unlawful for any person within the United States, or person outside the United States if the recipient is inside the United States -

**(A)** to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice-

**(TCPA) 47 U.S.C. §227(b)(1)(A)(iii) states in part;**

**(1) PROHIBITIONS—** It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

**(A)** to make any call (other than a call made for emergency purposes or made with the prior *express written consent* of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

**(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is called for the call;

**61.** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 has caused/committed at least [29] *twenty nine separate and distinct TCPA strict statutory violations* with their illegal debt collection activities over the past several months using telephone[s] with automatic telephone dialing system [ATDS] "*capabilities*",

**6.9.2a.6 - ALLEGATIONS OF HARM IN TCPA CASES -:**

**62.** Plaintiff TUCK hereby SO STATES the following Allegations of Harm pursuant to **TCPA Allegations of Harm 6.9.2a.6** as follows:

- a) Congress enacted the TCPA to prevent real harm, Congress found that "automated" or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

- b) Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy".

- c) Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by trespassing upon and interfering with the Plaintiff's rights and interests in Plaintiff's cellular phone.

- d) Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by intruding upon Plaintiff TUCK's seclusion.

- e) Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by causing Plaintiff aggravation and annoyance.

- f)  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by wasting the Plaintiff's valuable time.

- g)  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by depleting the battery life on Plaintiff's emergency cellular phone.

- h)  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by using [emergency call or text minutes] allocated to Plaintiff by Plaintiff's cellular telephone service provider.

- i)  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 [29] twenty nine illegally placed debt collection calls, messages or texts harmed the Plaintiff by using date storage space in Plaintiff TUCK'S emergency cell phone.

**63.**  Plaintiff TUCK has article III standing.

**64.**  Plaintiff TUCK spoke with Defendant's employee's/agent's about the [29] twenty nine illegally placed debt collection calls, and Defendant's employee's/agent's assured Plaintiff that ALL the calls and debt collection attempts to his name and emergency cell phone number would stop. **Nothing was farther from the truth**.

**65.**  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 not only *refused to cease and desist all communication and illegal phone calls*, but instead continued to break federal laws and statutes by continuing to report the alleged debt[s] to all three national CRA'S, and during this same entire time period continually violating 47 U.S.C. §227 over an extended amount of time.

**66.**  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 have damaged Plaintiff by violations of 47 U.S.C. §227 as follows:

§227(b)(1)(A) using a phone with automatic dialing system *capabilities* to call TUCK.
§227(b)(1)(A) placing a call to TUCK *without an emergency purpose*.
§227(b)(1)(A) placing a call to TUCK *without express (written) consent by TUCK*.
§227(b)(1)(A) placing a call to TUCK *with an artificial or pre-recorded voice*.
§227(b)(3)(B) placing a call to TUCK *without an established business relationship*.
§227(b)(1)(A)(iii) placing a call to TUCK for which TUCK is *charged for the call*.
§227(b)(1)(A)(iii) placing a call *without prior express written permission to call TUCK*.

67. An *un-intentional* call carries a damage amount of $500 for the first *un-intentionally* placed call by <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F and Does 1-25</u>. This same first illegally placed <u>*un-intentional call*</u> was placed by <u>Defendant's</u> starting in April of 2016.

68. Each additional ***intentionally* placed debt collection call** by <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25</u> carries a damage amount of $1,500 for each and every additional illegally placed debt collection call to the Plaintiff after the first intentionally placed call during April of 2016, each additional call is pursuant to 47U.S.C.§227(b)(3).

69. <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25</u> have demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A) and §227(b)(1)(A)(iii) by calling the Plaintiff's emergency cell number more than [29] twenty nine times **after** their first **intentionally** placed call, most especially **after** being told by Plaintiff TUCK on the very first **intentionally** placed call to ***<u>NEVER call his emergency cell phone number again</u>***, ever.

70. Each individual distinct call placed by <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25</u> staff after the first unintentional illegal call is subject to ***treble*** damages or ***<u>$1,500 for each and every additional call</u>*** pursuant to 47 U.S.C.§227(b)(3) as each additional call was ***<u>intentional and willful</u>***.

71. Plaintiff TUCK and <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25</u> (1) *NEVER had* an *established business relationship* within the meaning of 47 U.S.C. §227 (2) Plaintiff ***<u>did not</u>*** give <u>Defendant's</u> his personal emergency cell phone number, **<u>ever</u>**. (3) <u>Defendant's</u> ***did not*** have *express written permission* to call Plaintiff's emergency cell phone, (4) Plaintiff notified <u>Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25</u> *<u>verbally and in writing to stop calling</u>* Plaintiff's emergency cell phones, (5) Plaintiff was charged for each call. Plaintiff is entitled to damages of $1,500 per statutory violation pursuant to 47 U.S.C. §227(b)(3)(C).

**WHEREFORE,** Plaintiff TUCK demands judgement for damages against Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 for statutory damages of $42,500.00 U.S. dollars plus attorneys fees and costs, pursuant to TCPA 47 U.S.C. §227.

## VI.  SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA) 15 U.S.C. §1692 *et seq.*
## BY DEFENDANTS W.F.B., W.F.C.S. N.C.F.S., N.C., R.F. AND DOES 1-25

**72.**    Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 71 herein.

**73.**    Plaintiff TUCK is a *"consumer"* within the meaning of (FDCPA) 15 U.S.C.*§1692a(3)*.

**74.**    Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 are ALL *"debt collector's"* within the meaning of (FDCPA) 15 U.S.C. *§1692a(6)*.

**75.**    Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violations include but are not limited to the following:

**a)**    Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C.*§1692c(a)*(1) by contacting plaintiff TUCK at a *time and place known to be inconvenient*.

**b**    Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) U.S.C. *§1692d by engaging in conduct that the natural consequence of is to harass, abuse, and oppress* plaintiff TUCK.

**c)**    Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) U.S.C.*§1692d(2) by using abusive language in an attempt to collect an alleged debt* from the Plaintiff.

**d)**    Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) U.S.C.*§1692d(5)* when Defendant's *caused* plaintiff TUCK'S emergency *telephone to ring repeatedly and continuously more than [29] twenty nine times over an extensive amount of time with the intent to annoy, abuse, and harass the Plaintiff.*

**e)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) U.S.C.*§1692e by making false, deceptive and misleading representations in connection with the alleged consumer debt collection[s]*.

**f** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C. *§1692e(2) by falsely representing the character, amount, or legal status of any consumer debt*.

**g)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C.*§1692e(4) by misrepresenting that non-payment of any debt will result in the arrest or imprisonment of any person*.

**h)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C.*§1692e(5) for threatening to take any action against the plaintiff that cannot legally be taken or that is not intended to be taken*.

**i)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C.§1692e(8) *by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt was disputed and re-disputed*.

**j)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C.§1692e(10) *by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer*.

**k)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C. §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law*.

**l)** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 violated (FDCPA) 15 U.S.C. §1692g by, **1)** within five (5) days after the initial communication with plaintiff in connection with the collection of any debt, ***failing*** *to send plaintiff a written notice containing a statement that unless the consumer, within thirty (30) days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;*

**2)** *a statement that if the consumer notifies the debt collector in writing the thirty (30) day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgement against the consumer and a copy of such verification or judgement will be mailed to the consumer by the debt collector; and a statement that, upon the consumers's written request within the thirty (30) day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.*

**WHEREFORE,** Plaintiff, ZACH TUCK, respectfully requests judgement be entered against Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 for the following:

**76.** Declaratory judgement that the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 conduct violated the Fair Debt Collection Practices Act;

**77.** Statutory damages of $1,000.00 for each violation pursuant to the Fair Debt Collection Practices Act 15 U.S.C. *§1692k* .

**78.** Costs and reasonable attorneys fees pursuant to the Fair Debt Collection Practices Act *15 U.S.C. §1692k.*

**79.** Any other relief that this Honorable Court deems appropriate.

## VII.   THIRD CAUSE OF ACTION
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 et *seq.* WILLFUL OR NON-COMPLIANCE BY DEFENDANTS W.F.B., W.F.C.S. N.C.F.S., N.C., R.F. T.U., E.I.S., EXPERIAN, AND DOES 1-25

**80.** Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in paragraphs 1 thru 79 herein.

**81** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., Does 1-25 are professional debt collectors with corporate offices located inside the continental United States.

**82.** Defendant's E.I.S., T.U., EXPERIAN are all national consumer credit reporting agencies or CRA'S.

**83.**   On or around November of 2016, Plaintiff TUCK, who is not a minor, checked his consumer credit reports from all three national credit reporting agencies, Experian, Equifax, and Trans Union (collectively "CRAs"), and discovered *at least [5] five* separate and individual consumer credit accounts collectively placed in negative status being reported by Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25. These same negative credit accounts were unfamiliar to Plaintiff TUCK, as he did not recall ever opening them and *he was **never** informed by any of these furnishers of their negative credit reporting*.

**84.**   On several occasions between February and May of 2017 Plaintiff TUCK contacted the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 disputing in writing the unknown negative credit accounts being reported by the defendants's pursuant to 15 U.S.C. §1681s-2(b) (FCRA).

**85.**   Between February and June of 2017, following his credit bureau disputes and re-disputes, Plaintiff TUCK sent letters to these same Defendant's in which he ***demanded*** documentation substantiating the existence, ownership and ***accuracy*** of the negative consumer credit accounts reported by each of them, ***otherwise their immediate deletion from his credit file***.

**86.**   Upon receipt of Plaintiff's disputes these same Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 each continued to report the [5] five disputed accounts to all three CRAs, without notice that the accounts had been disputed by Plaintiff, all throughout the investigation period and thereafter. They further failed to properly address Plaintiff's direct disputes and re-disputes with them and ***failed to provide for his requested "verification" and "validation"*** for these disputed negative consumer accounts.

**87.**   During March, April, May and June of 2017 Plaintiff TUCK followed up with the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 and each one of them on multiple occasions in writing, submitting and re-submitted his requests/disputes and *demanding immediate deletion of the unverified*

1   *accounts due to lack of verification,* but each of these correspondences went *unanswered,*

2   *ignored,* or were improperly handled and responded to, all of his efforts and

3   correspondences proved *unsuccessful* in attaining *any of the Defendants's cooperation*.

4       **88.**   Regardless of Plaintiffs' numerous attempts to seek Defendant's cooperation

5   Defendant's each one of them continuously, to date, failed to answer back to Plaintiff with

6   appropriate proof of investigation or re-investigation to acquire verification/validation of

7   the information in dispute and ***totally and completely failed to take corrective action***.

8       **89.**   These inaccurate consumer credit accounts negatively reflect upon Plaintiff as

9   a consumer, borrower/debtor and they negatively impact his credit worthiness and financial

10   standing in an ever increasing way.

11       **90.**   Plaintiff TUCK has suffered financial and emotional distress as a

12   direct result of Defendants' violations, which include but are not limited to the

13   following:

14       a.   Actual damages arising from monetary losses related to denials to new

15   credit, loss of use funds, loss of credit and loan opportunities, excessive and/or elevated

16   interest in financial charges;

17       b.   Out of pocket expenses associated with communicating with Defendant's,

18   disputing the negative credit information, and fees paid to attorneys and credit professionals

19   for the assistance attained in the process;

20       c.   Emotional distress and mental anguish associated with having derogatory

21   credit information transmitted about Plaintiff to other people both known and unknown;

22       d.   Decreased credit score and creditworthiness, which may result in the

23   inability to obtain credit, employment or affordable housing without larger security deposits

24   on future attempts.

25       **91.**   Defendants' knowingly and willfully violated the FCRA. Defendant's

26   violations include, but are not limited to the following:

27       a.   Failing to inform Plaintiff about negative credit reporting made on his

28   credit report, prior to within five (5) days of furnishing a collection account to the CRA'S,

1    in violation of (FCRA) 15 U.S.C. §1681s-2(a)(7)(A),;

2        b.   Failing to conduct a proper and complete investigation of disputed negative

3    consumer credit information upon the receipt of Plaintiff TUCK's disputes

4    in violation of (FCRA) 15 U.S.C.§1681s-2(a)(8)(E);

5        c.   Verifying disputed accounts with the CRA'S prior to conducting a

6    thorough investigation and without having substantiating support for such verification;

7        d.   Reporting disputed information to the CRAs, without notice of

8    Plaintiff's dispute, during the investigation period and prior to providing

9    verification of accuracy in violation of (FCRA) 15 U.S.C.§1681s-2(a)(3);

10        e.   Out of pocket expenses associated with the communication with

11    Defendants, disputing the negative consumer credit information, and fees paid to

12    attorneys and credit professionals for their assistance attained in the process;

13    **92.**   The (FCRA) 15 U.S.C.§1681b defines the *permissible purpose* for which a

14    person may obtain a consumer credit report.

15    **93.**   Such *permissible purposes* as defined by (FCRA) 15 U.S.C.§1681b are

16    generally, if the consumer makes application for credit, makes application for employment,

17    for underwriting of insurance involving the consumer, or is offered a bona fide offer of

18    credit as a result of the inquiry.

19    **94.**   Plaintiff TUCK has never had any business dealings or any accounts with,

20    made application for credit from, made application for employment with, applied for

21    insurance from, nor received a bona fide offer of credit from any/all of the Defendant's.

22    **95.**   At ***no time*** did Plaintiff TUCK give his consent for Defendant's W.F.B.,

23    W.F.C.S., N.C.F.S., N.C., R.F. and Does 1-25 to acquire his consumer credit report from

24    *any* consumer reporting agency ("CRA").

25    **96.**   Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN

26    and Does 1-25 have demonstrated willful and/or knowing non-compliance with the

27    (FCRA), 15 U.S.C.§1681b and repeatedly violating plaintiff TUCK's right to privacy.

28

97.   Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 had a *duty* to properly ascertain if there was any legitimate permissible purpose before obtaining Plaintiff's consumer credit  report or reporting on his credit file.

98.   Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 *breached said duty by failing to do so*.

**WHEREFORE,**   Plaintiff, ZACH TUCK, respectfully requests judgement be entered against Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 for the following:

•   Declaratory judgement that the Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 illegal conduct violated the Fair Credit Reporting Act  (FCRA) 15 U.S.C. §1681s-2 *et seq.*

•   Statutory damages of $1,000.00 for each violation pursuant to the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681s-2 *et seq.* Costs and reasonable attorneys fees pursuant to the Fair Credit Reporting Act  (FCRA) 15 U.S.C. §1681s-2 *et seq.* Any other relief that this Honorable Court deems appropriate.

## VIII.   FOURTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CIVIL CODE §1788 et seq.
### BY DEFENDANTS W.F.B., W.F.C.S. N.C.F.S., N.C., R.F. T.U., E.I.S., EXPERIAN, AND DOES 1-25

99.   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in the above paragraphs 1 thru 98 herein.

100.   Plaintiff is a *consumer* within the meaning of 15 U.S.C. §1692 *et seq.*

101.   Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 are *seeking to  collect a consumer debt* from Plaintiff TUCK as defined by California C.C. §1788.10(f).

102.   The credit account[s] in question are alleged consumer credit transactions as defined by California Civil Code §1788.2(e) as Plaintiff TUCK has allegedly received property or money from Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S.,

1  EXPERIAN and Does 1-25 or TUCK has received an extension of credit, services or

2  money which was used primarily for personal, family, or household purposes.

3      **103.** Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S.,

4  EXPERIAN and Does 1-25 have damaged Plaintiff TUCK by violations of

5  California Civil Code §1788 as follows:

6      **a.** §1788.10(c) debt collectors and credit reporting agency Defendant's W.F.B.,

7  W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 continuous

8  negative credit reporting *on Plaintiff TUCK'S credit reports that they all knew would*

9  *defame the alleged debtor TUCK.*

10      **b.** §1788.10(f) threat by Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U.,

11  E.I.S., EXPERIAN and Does 1-25 to take action which is prohibited by this title.

12      **c.** §1788.11(e) constitutes harassment.

13      **d.** §1788.12(c) communication .. Deadbeat list (Debt Report)

14      **e.** §1788.13(j) false representation . . threatening service termination . .

15  unless payment is made.

16      **f.** §1788.17 shall comply with provisions of §1692b to §1692j; subject to §1692k.

17      **WHEREFORE,** Plaintiff TUCK demands judgement for damages against

18  Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and

19  Does 1-25 for statutory damages of $1,000.00 U.S. dollars, attorneys fees pursuant to

20  §1788.30(b) and costs, pursuant to §1788.30[c].

21               **IX   DEMAND FOR JURY TRIAL**

22      Plaintiff hereby demands a trial by jury of all issues, so triable as a matter of law.

23

24                  Respectfully submitted,

25

26  Dated this _7th_ day of August 2017

27                      Zach Tuck

28              **ZACH TUCK, PLAINTIFF IN PRO SE**

## VERIFICATION OF ZACH TUCK

1.   I, ZACH TUCK, declare as follows:

2.   I am of age, sound mind and competent to testify to facts based on firsthand knowledge of all of the above items as so stated herein.

3.   I have been damaged financially, credit wise, socially and emotionally as a result of Defendant's W.F.B., W.F.C.S., N.C.F.S., N.C., R.F., T.U., E.I.S., EXPERIAN and Does 1-25 unlawful actions and numerous violations as so stated in the attached Complaint . . .

4.   I have read all of the foregoing pleadings and know the facts therein so stated To be true and correct to the best of my knowledge.

5.   I declare, under the penalty of perjury to the laws of the state of California, that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated this _7th_ day of August 2017


_Zach Tuck_

**ZACH TUCK, PLAINTIFF IN PRO SE**

///
///
///
///
///
///
///
///

U.S. POSTAGE
$7.20
PRML    0006
Orig: 92084
Dest: 92101
08/07/17
11112962

R2305P150033    25    90

CPU

Expected Delivery Day: 08/08/2017

USPS TRACKING NUMBER

9505 5265 3526 7219 0806 91



UNITED STATES
POSTAL SERVICE

VISIT US AT USPS
ORDER FREE SUPPLIES

PRIORITY
★ MAIL ★

FROM:

FROM:

Zach Tuck
1600 E. Vista Way
Space #85
Vista, CA  92084



TO:

United States District Court
Southern District of California
Office of the Clerk
333 West Broadway, Suite 420
San Diego, CA  92101

: OF DELIVERY SPECIFIED *

TRACKING™ INCLUDED*

RANCE INCLUDED *

JP AVAILABLE

estic only

NTERNATIONALLY,
S DECLARATION
BE REQUIRED.